OPINION OF THE COURT
Joseph J. Maltese, J.
In view of the Court of Appeals 4 to 3 split decision in People v Atkins (85 NY2d 1007 [1995]), this court, upon the application of the People, has reconsidered its decision of June 6, 1995 which suppressed the results of a breathalyzer test, and hereby sets it aside.
This court now holds that in this prosecution of Vehicle and Traffic Law § 1192 for operating a motor vehicle while impaired or intoxicated by alcohol, upon objection of the defense, the prosecution must establish, at a hearing by expert testimony, scientific evidence that a blood-alcohol content (BAG) test taken more than two hours after the arrest of the defendant is competent, reliable and probative of the fact that the defendant was impaired or intoxicated when he operated a motor vehicle before such results may be admitted as relevant evidence at the trial.
Recently, the Court of Appeals in Atkins (supra) allowed a BAG test for drugs to be admitted into evidence when the defendant consented to take the test within two hours of arrest, and where the test was actually administered 2 hours and 28 minutes after the arrest. More recently, Judge Grosso, in People v Capraella (165 Misc 2d 639 [Crim Ct, Queens County 1995]), denied a motion to suppress the results of a BAG test administered after two hours, and held that Atkins eliminated the two-hour rule when a defendant expressly consents to take the BAG test. However, Judge Grosso stated that it was unclear whether Atkins only applies where the defendant consents to *551 take a BAG test within two hours of arrest. Both Judge Grosso and this court believe that the Court of Appeals in Atkins has created more questions than answers to the Vehicle and Traffic Law § 1194 two-hour rule. Hence a review of the two-hour rule is appropriate to understand and place Atkins in its proper perspective.
THE TWO-HOUR RULE
Under Vehicle and Traffic Law § 1194 (2) and the New York State Department of Health Regulations (10 NYCRR 59.2 [c] [2]) regarding the administration of blood and breath tests it is mandated that the BAG test shall be administered within two hours of arrest.[1]
The two-hour rule actually benefits the prosecution in that it creates a presumption that the BAG test results are admissible. Absent such a rule the prosecutor would need to establish by expert testimony the scientific relevancy of the test in every drunk driving prosecution. Since the Court of Appeals in Atkins (supra) will allow evidence of a BAG test taken more than two hours from arrest to be presented in a trial, the People lose their presumption of the scientific reliability beyond two hours from arrest and must now establish same at a pretrial hearing.
Prior to the Court of Appeals decision in Atkins (supra) all of the Appellate Divisions and the various trial courts had rendered numerous disparate published decisions regarding the interpretation of the two-hour rule. Despite the conflicting *552 views, the Court of Appeals in Atkins, a 4 to 3 majority memorandum decision, sheds little guidance on the interpretation of the two-hour rule. Only the dissent discusses the issues. In affirming the unreported decision of the First Department, Appellate Term’s affirmance of an unreported New York County Criminal Court decision, the Court of Appeals relied upon People v Ward (307 NY 73 [1954]).
In Ward (supra), the 1954 Court of Appeals stated that "actual consent” nullifies "implied consent”. While this may be true, the Court of Appeals in Ward was not discussing the "two-hour rule.” In fact, the "implied consent” statute (Vehicle and Traffic Law former § 71-a) and the two-hour rule (Vehicle and Traffic Law former § 70 [5]) were in different parts of the statute.[2]
Moreover, the issue of the nonvoluntariness of the defendant’s consent was not even addressed by the Court in Atkins as it was not preserved for appeal (see, People v Atkins, supra, at 1009, n 2).
The Appellate Term, First Department’s holding in People v Atkins (order No. 94-048, June 22, 1994) relied heavily upon the case of People v Mills (124 AD2d 600 [2d Dept 1986], lv denied 69 NY2d 953 [1987], supra) which since its decision in 1987 has been cited numerous times for the proposition that the results of a chemical blood-alcohol content test administered beyond two hours after the defendant’s arrest may be admitted into evidence, as long as the defendant consented to the test.[3]
*553 PEOPLE v MILLS
However, the Second Department of the Appellate Division in Mills (supra) was affirming a Penal Law conviction to reckless vehicular homicide, not the extension of the two-hour rule of the Vehicle and Traffic Law. As Judge Tallmer, a Criminal Court Judge in the First Department, stated in People v Edwards (NYLJ, May 12, 1992, at 26, col 6 [Crim Ct, NY County]): "[Mills (supra)] is distinguishable on its facts. In Mills, defendant was charged with criminally negligent homicide, not driving while intoxicated. Thus, the Appellate Division’s holding that the two-hour rule does not apply where express consent is given is dicta as to whether compliance with the two-hour rule must be proven by the People as an element of the crime of driving while intoxicated” (emphasis added).
Unfortunately, such facts were not clear in the one-page memorandum decision affirming the conviction. As a result, Mills (supra) has been consistently misread and misapplied since its issuance. Only a reading of the appellate record places the Mills decision in its proper context, the affirmance of a negotiated plea to vehicular homicide. Since the two-hour rule in a Vehicle and Traffic Law case was not ruled upon in Mills, it may be distinguished from the typical DWI case where the two-hour rule applies.
The facts in Mills (supra) demonstrate the old legal adage by Justice Holmes that hard facts make bad law.[4] Harry Mills, Jr. was a college student and the son of a Town Justice who was driving an automobile which was involved in an accident which left a mother of two dead.[5] After Mills pleaded guilty to criminally negligent homicide (Penal Law § 125.10) and received what may be argued is a light sentence,[6] the defendant appealed the sentence and all decisions made on prior motions, including a decision holding all provisions of Vehicle and Traffic Law § 1194, including the two-hour rule, inapplic *554 able as the case involved the Penal Law and not the Vehicle and Traffic Law.
The trial court held that "[t]he requirements of the Vehicle and Traffic Law § 1194 are not relevant [and therefore] the test results will only be admissible if obtained with the defendant’s consent or pursuant to a court order” (MR 73).[7] The trial court then held that CPL 60.75[8] imposed a "requirement that an individual be separately charged with a violation of [Vehicle and Traffic Law § 1192] before the more lenient requirements of [Vehicle and Traffic Law § 1194] will be applied to the use of the test results on the trial of the Penal Law charges” (MR 11). As a result, the trial court only held a hearing on the issue of whether the defendant’s consent to the removal of his blood was knowing and voluntary under the circumstances in which it was given. (See, People v Casadei, 66 NY2d 846 [1985].)
In short, the Mills case (supra) was not about interpreting the proper use of the two-hour rule of Vehicle and Traffic Law § 1194. In fact, the trial court never made a finding as to how long after the arrest the chemical test was given to the defendant or if the test was offered or given more than two hours after arrest.[9]
*555 MILLS IS NOT UNIVERSALLY FOLLOWED
"While Mills (124 AD2d 600, supra) has generally been cited and followed, albeit for the wrong reasons, throughout the Second Department, it has not been followed by the Fourth Department and has met mixed reviews by the Third Department. The First Department, Appellate Division has not addressed the two-hour rule, however, lower courts within the First Department are divided on its interpretation (see, People v Dillin, NYLJ, Oct. 5, 1990, at 23, col 3 [Crim Ct, NY County] [following Mills]; People v Ali, 151 Misc 2d 742 [Crim Ct, NY County 1991] [not following Mills]). However, the Appellate Term of the First Department, which handles appeals from the criminal courts of New York and Bronx Counties, seems to have adopted Mills (People v Byington, NYLJ, Dec. 8, 1989, at 21, col 1).
Even within the Second Department, Mills (supra) has led to some seemingly illogical conclusions. For example, in People v Stelmach (191 AD2d 733 [2d Dept 1993], supra) the Appellate Division, Second Department, held that an operator of a motor vehicle may be requested to consent to a chemical test at the direction of a police officer within two hours of arrest. However, the Court then went on to state that since the defendant consented to a blood test, the two-hour statutory requirement does not apply (at 734, citing People v Mills, supra; People v Abel, supra). Query, is a BAG test admissible where a person’s consent is based upon a request by a police officer more than two hours after an arrest? The Atkins case (supra) suggests that at least consent must be obtained within two hours from the arrest.
The Fourth Department has come to a different conclusion than the Second Department stating that "[u]nless the test is taken within the two-hour time limit * * * the results are not competent evidence and may not be received in evidence against the operator” (People v Brol, 81 AD2d 739, 740 [4th Dept 1981]).
*556 The Appellate Division, Third Department, has reached opposite conclusions with two different panels, one panel holding the test results not be admissible and another more recent panel, following Mills (supra), held that the People had no duty to prove that the test was administered within two hours of the defendant’s arrest. (See, People v Keane, 76 AD2d 963 [3d Dept 1980]; People v Abel, 166 AD2d 841 [3d Dept 1990], supra.)[10] The Third Department, however, still believes that the two-hour rule is a rule of evidence as opposed to one of procedure (Matter of Cook v Adduci, 205 AD2d 903 [3d Dept 1994], lv denied 84 NY2d 811 [1994]), relying on the New York Court of Appeals statement in Matter of Viger v Passidomo (65 NY2d 705, 707 [1985]) that "[t]he two-hour time period set forth in Vehicle and Traffic Law § 1194 (1) is an evidentiary rule.” (See also, Matter of White v Fisher, 49 AD2d 450 [3d Dept 1975].)
In People v Sesman (137 Misc 2d 676, 681 [Crim Ct, Bronx County 1987]), Judge Donati then sitting in Bronx County (within the First Department) held that the People must prove that the BAG test was administered within two hours from arrest beyond a reasonable doubt and that the results of a breathalyzer "are not competent evidence and should not be presented for consideration to the jury unless such test was administered within two hours of defendant’s arrest.” Judge Donati stated that it was "axiomatic that Vehicle and Traffic Law § 1194 * * * which governs the administration of the breathalyzer test, was enacted to insure that the results of any chemical test will be both probative and meaningful with respect to the amount of alcohol in a given defendant’s blood at the time of his operation of a motor vehicle” (supra).
It is worth noting that the Court of Appeals in its recent Atkins decision (supra) does not even cite the Mills case (supra) nor does it address the conflict within the Departments on the two-hour rule.
TWO HOURS SHOULD MEAN TWO HOURS
In order to have some consistency and reliability, evidence should not be admissible, regardless of waiver or consent, if it is not probative, competent or relevant, i.e., scientifically acceptable. The law as developed by the Legislature in Vehicle and Traffic Law § 1194 and in the New York State Health Department Regulations (10 NYCRR 59.2 [c] [2]) is that a BAG *557 shall be given two hours from arrest. This standard, albeit an artificial one, should not mean 2 hours and 28 minutes or 2 hours and 41 minutes. Nor should the rule allow the courts to disregard the 39 minutes a defendant sat in a police car after an accident, albeit "voluntarily” before being "arrested” thereby extending the time to 2 hours and 39 minutes as the Fourth Department allowed in People v Fenti (175 AD2d 598 [4th Dept 1991]). It should be noted, however, that Fenti (supra) also involved an accident and a death, but the defendant was only convicted of driving while intoxicated under the Vehicle and Traffic Law. Again, hard facts make bad law.
Consent to taking a test which may lead to unscientific results should not make the test results competent or relevant. Courts should determine that such unscientific evidence is irrelevant and thereby should not be admitted into evidence at trial. Gamesmanship by the police, prosecutors, defense attorneys and even the courts should not override the legislatively mandated rule of two hours from arrest which arguably is based upon some scientific rationale.[11]
SCIENTIFIC JUSTIFICATION AND LEGISLATIVE HISTORY OF THE TWO-HOUR RULE
A review of the scientific rationale and the legislative history of this section might lead courts to a different, more rational, conclusion. Namely, that stale test results may not be competent evidence, or that bad science makes bad law.
New York, unlike the Federal courts, still follows the "Frye” test in dealing with the issue of whether evidence is scientifically reliable (People v Frye, 293 F 1013 [DC Cir 1923]).[12] "While foundation [evidence] concerns itself with the adequacy of the specific procedures used to generate the particular evidence to be admitted, the test pursuant to [Frye] poses the more elemental question of whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally” (People v Wesley, 83 NY2d 417, 422 [1994], supra).

*558
a. Scientific Justification

The courts routinely accept evidence of the BAG of a person at the time of the test. Additionally, the breathalyzer has been in public use since 1954 and has been widely accepted and adopted by law enforcement agencies for use in testing BAG (see, People v Donaldson, 36 AD2d 37 [4th Dept 1971]; People v Morris, 63 Misc 2d 124 [Nassau Dist Ct 1970]). The BAG test clearly is the most important single piece of evidence from which the condition of the person at the time of the incident will be inferred. The court holds a special duty to ensure that evidence of such a "conclusive” nature is not shown to the trier of fact unless it is certain that the test results are competent evidence. "[T]he longer the delay between the time of [the] incident and [the] sample collection, the more difficult it becomes, scientifically, to draw reasonable inferences from one 'data point,’ back to the 'driving’ time” (Fitzgerald and Hume, Intoxication Test Evidence: Criminal and Civil § 2:30 [1987 ed, 1994 Supp]). It ordinarily takes 45 to 90 minutes to obtain a peak BAG level on an empty stomach and 2 to 3 hours if the alcohol is consumed with or after a meal, and the average rate of elimination for a 150-pound person is 7 grams per hour. (Note, In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law, 64 NYU L Rev 141 [1989].) "Thus, a BAG measured sometime after the defendant is arrested may well be higher than if the test had been administered at the time of the arrest, before the peak BAG had been attained” (id., at 148-149).
Kurt M. Dubowski, Ph D, in his book Alcohol and Traffic Safety, argued that it is often impossible to establish the actual blood-alcohol concentration at a prior material time from the results of a single test. Dr. Dubowski also believed that the difficulty of establishing an accurate BAG generally increased with the magnitude of the time interval between sampling and the time of importance (i.e., operation) (reprinted in part in Erwin, Defense of Drunk Driving Cases § 15.03 [3d ed 1985]).[13]
This court believes that there is ample scientific evidence that the delay between the time of the arrest and the time a
*559 chemical test is given might significantly reduce the reliability of the evidence if that time period is too great. Our Legislature determined that as long as the test was given within two hours[14] of the arrest then the results would be competent evidence. If courts extend this time period under the guise that the defendant was not "arrested” for a substantial period of time after a stop or accident and then hold that the two-hour rule only applies to cases where the defendant has not consented to take the test, then courts would be receiving evidence that may not have an adequate scientific basis. Hence the chance of prejudicing the defendant might outweigh any probative value of the evidence and therefore should not be admitted into evidence.
Perhaps a more rational starting point would be two hours or, if established scientifically, even three hours from the time of operation of the motor vehicle (i.e., the stop by the police or the time of the accident). This, in fact, was one of the arguments made by the Association of the Bar of the City of New York when it recommended that the Governor not sign the bill creating the two-hour rule (see, Bill Jacket, L 1941, ch 726). While this may create some evidentiary problems in establishing the exact time of operation of the motor vehicle, it would eliminate some of the gamesmanship of when the defendant was under arrest. Clearly, it is the province of the Legislature to make such an amendment and not the courts.
b. Legislative History[15]
The admission of BAG test results in drunk driving cases began in 1941 when the Legislature provided that the results of tests measuring a driver’s BAG were admissible at trial if the test was administered within two hours of arrest (L 1941, ch 726, amending Vehicle and Traffic Law § 70 [5]; see gener *560 ally, People v Ali, 151 Misc 2d 742 [Crim Ct, NY County 1991], supra [historical analysis of the two-hour rule]).[16] "[T]he two-hour requirement was enacted to ensure that the results of the blood test constituted probative evidence of the defendant’s blood alcohol level at the time of operation of the vehicle” (People v Atkins, 85 NY2d 1007, 1009, supra [Simons, J., dissenting], citing Mem of Assemblyman Peterson in Support, Bill Jacket, L 1941, ch 726). The brief in support of the bill relied exclusively on the scientific community for its justification for allowing the chemical tests to be used in New York.
In 1953 the Legislature enacted the first "implied consent law” providing that anyone operating a motor vehicle " 'shall be deemed to have given his consent to a chemical test’ ” (People v Ali, supra, at 743). This statute (L 1953, ch 854) created a new section of the Vehicle and Traffic Law ( § 71-a) and left the section containing the two-hour limit unchanged ( § 70 [5]) (People v Ali, supra). In 1959, after recodification of the Vehicle and Traffic Law, the two-hour requirement was retained in section 1192 and the implied consent provision became section 1194 (People v Ali, supra; see, L 1953, ch 854).
In 1970, the two-hour rule was moved to the implied consent section of section 1194 (2) of the Vehicle and Traffic Law (People v Ali, supra; see, L 1970, ch 275).[17] Currently, Vehicle and Traffic Law § 1192 (2) and § 1195 (1) require that the chemical test be administered pursuant to Vehicle and Traffic Law § 1194.[18]
*561 Judge Walker in Ali (supra, at 747) held that he could not conclude that the Legislature in 1970 intended to accomplish a major change in the existing law by merely moving the language "embodying the two-hour requirement from Vehicle and Traffic Law § 1192 to Vehicle and Traffic Law § 1194.” He concluded that in the absence of clear language to that effect either in the statute itself or in the legislative history, the "detailed safeguards embodied in Vehicle and Traffic Law § 1194 (2) (a)” are not intended to solely apply to unconscious drivers (supra). One of the factors that led Judge Walker to his conclusion was the Court of Appeals case People v Mertz (68 NY2d 136 [1986]).
In Mertz (supra), although the issue of whether the results of a breathalyzer test administered more than two hours after the arrest was not addressed by the Court, as the test was administered within the two-hour time frame, it was implicit in the Court’s reasoning that there was a two-hour rule. The Court of Appeals stated that "the BAG count shown within two hours after arrest is strong but not conclusive evidence of the BAG during operation” (supra, at 146 [emphasis added]). The Court also gave scientific justification for the rule when it stated that the chemical test must be made within two hours because "the decline does not begin until sometime after the last drink, variously estimated as from 45 minutes to an hour and a half” (supra, at 143). The High Court then held that "proof of a breathalyzer reading of .10 or more within two hours from arrest establishes prima facie a violation of Vehicle and Traffic Law § 1192 (2) which, together with evidence of one or more of the defendant’s deportment, speech, stability and the odor of his or her breath, is sufficient to sustain a conviction “0supra, at 146 [emphasis added]). Additionally, Chief Judge Wachtler in the concurring opinion stated that "the gravamen of a violation of Vehicle and Traffic Law § 1192 (2) is not that a defendant operates a vehicle with .10% or higher blood alcohol content, but that he is found to have done so under the procedures prescribed by section 1194” and "[s]ection 1194 (1), in turn, provides for the administration of the breathalyzer test up to two hours after an arrest upon probable cause” (supra, at 149).
In People v Moselle (57 NY2d 97, 101 [1982]) the Court of Appeals held that: "[a]bsent a manifestation of a defendant’s consent thereto, blood samples taken without a court order other than in conformity with the provisions [of Vehicle and Traffic Law § 1194] are inadmissible in prosecutions for operat *562 ing a motor vehicle while under the influence of alcohol under section 1192 of that law” (emphasis added).
A chemical test may be performed absent a defendant’s actual consent and even over his objection without violating his constitutional rights.[19] If there is probable cause to believe that the defendant was intoxicated and that exigent circumstances exist (i.e., an unconscious or disoriented defendant), and provided reasonable examination procedures are employed, to include administering the test in accordance with the provisions of the Vehicle and Traffic Law, i.e., within the two-hour time frame, then the BAG test may be admitted into evidence (People v Kates, 53 NY2d 591, 594-595 [1981]).
Accordingly, an express, intelligent, knowing consent is not required in order for the results of a BAG test to be admitted into evidence at trial. All that is needed is that the defendant did not expressly refuse to submit to the test if the test is administered during the "deemed consent” period of two hours from arrest or a preliminary breath test pursuant to Vehicle and Traffic Law § 1194 (2) (a).
The deemed consent section of Vehicle and Traffic Law § 1194 (2) (a) limits the time period to two hours. Arguably the Legislature limited the deemed consent period to two hours because BAG tests beyond two hours may no longer be scientifically relevant and probative of the issue of intoxication at the time of arrest.
CONSENT BEYOND TWO HOURS
In People v Morales (161 Misc 2d 128, 131 [Crim Ct, Kings County 1994], supra) the court held that: "[W]here a driver *563 explicitly consents to the administration of a chemical test, the time constraint contained in the 'implied consent’ section [Vehicle and Traffic Law § 1194 (2) (a)] are [sic] inapposite. Therefore, if express consent is obtained, then the results are admissible despite the fact that more than two hours have passed since the defendant’s arrest.” (See also, People v Johnson, NYLJ, Apr. 15,1991, at 26, col 1 [Sup Ct, NY County], supra.)
Judge Garnett commented in Morales (supra, at 132) that the Second Department "transformed the two-hour rule from one of evidentiary significance to one of procedural consequence” as the "rule no longer has evidentiary significance because chemical test results obtained more than two hours after a defendant’s arrest by express consent or court order are now admissible” (citing People v Johnson, NYLJ, Apr. 15, 1991, at 26, col 1 [Sup Ct, NY County], supra; People v Dillin, 150 Misc 2d 311 [Crim Ct, NY County 1991], supra.) He also stated (at 132) that "the rule has been interpreted to delimit the period in which the police may invoke their 'implied consent’ authority to perform a chemical test on a driver who is incapable of giving consent.” However, the Judge did caution in a footnote that the trial court still had the authority to preclude the evidence of a refusal taken over two hours from arrest if its probative value was outweighed by its prejudicial effect (People v Morales, supra, at 136, n).
In People v Bezer (NYLJ, Nov. 8, 1991, at 25, col 3 [Crim Ct, Bronx County], supra) Judge Duckman goes one step further. There, he concluded that after two hours from arrest the "implied consent” of the defendant "lapses” as does the "possible consequences that his refusal to take the test would be admissible in a prosecution against him.” (Supra, at 25, col 5.) Judge Duckman reasoned that since the warnings given to the defendant "did not accurately state the law” the defendant’s consent was not "knowingly” made, and consequently it was not an "express consent” as required by Mills (supra).
Recently, this court held in Sidorov, and Judge Grosso in Capraella (165 Misc 2d 639, supra), which were both reported on the same day in the New York Law Journal, that there exists no obligation to advise an individual of any rights prior to the administration, of a breathalyzer exam. (See, People v Sidorov, NYLJ, Aug. 1, 1995, at 28, col 6 [Crim Ct, Kings County].) Judge Grosso held that there is no obligation on the part of law enforcement officials to advise a suspect of anything regarding the administration of a breathalyzer examination *564 even when the request to submit to what he calls a "search test” occurs beyond two hours from arrest (People v Capraella, supra, at 644).
A simple request by the police to take a breathalyzer exam is sufficient to result in a "voluntary consent” as long as "there is no express or implied coercion by law enforcement officials [or] material misrepresentation of fact in securing” the consent (People v Capraella, supra, at 644). Judge Grosso placed the burden on the People, by "clear and positive evidence” that there was no misrepresentation of facts or coercion. Once the People meet their burden, the burden shifts to the defense to show why the consent was not voluntary.
COURT-ORDERED TESTS
The Second Department has ruled that the two-hour time limitation does not apply to court-ordered chemical tests (People v McGrath, 135 AD2d 60 [2d Dept 1988], affd 73 NY2d 826 [1988]). The justification for allowing such court-ordered BAG tests is that an impartial ruling will be made to determine if such a test will be relevant, based upon the particular facts and circumstances brought before the court where the order is being sought. Here, the Legislature is clearly "relying upon the sound discretion of a neutral Magistrate to ensure that the test results are reasonably related to the driver’s BAG at the time of the alleged offense” (People v Ali, 151 Misc 2d 742, 745 [Crim Ct, NY County 1991], supra).
Notwithstanding the foregoing decisions which may obviate the issue of consent, BAG tests taken beyond two hours from arrest must still be demonstrated to be scientifically reliable and probative on the issue of intoxication in order to be admitted into evidence. It is inconceivable that the Court of Appeals through Atkins (85 NY2d 1007, supra) intends to communicate to the lower courts and the Bar that BAG tests administered at any time are admissible in evidence without some limitation or inquiry into their probative value.
CONCLUSION
The Legislature adopted the two-hour rule in Vehicle and Traffic Law § 1194 (2) (a) to assist prosecutors in prosecuting drunk driving charges by eliminating the requirement of proving the scientific reliability of a BAG test in every prosecution. Therefore, a BAG test taken within two hours from arrest may be relevant evidence on the issue of intoxication at the time of driving. While two hours from the time of arrest may have *565 been an arbitrary rule, it has some scientific rationale to sustain it. A more scientifically relevant rule may be to extend, the two-hour rule to perhaps three hours from the operation of a motor vehicle, but that is not the law. Only the Legislature may change the two-hour rule of Vehicle and Traffic Law § 1194 (2) (a).
In view of the Court of Appeals decision in Atkins (supra) admitting evidence of a BAG test taken after two hours from arrest which was consented to within two hours of arrest, this court will not suppress the BAG test results taken after two hours from arrest at this time. However, since the BAG test was consented to and administered more than two hours from arrest, the People will not be entitled to the statutory presumption of Vehicle and Traffic Law § 1195 (1) that BAG tests properly administered pursuant to Vehicle and Traffic Law § 1194 will be admitted into evidence.
Instead, the People must now prove at a hearing by expert testimony the scientific reliability of such BAG test administered more than two hours from arrest. Moreover, the People must also establish by clear and convincing evidence that the defendant who consented to take the test more than two hours from arrest did so in a voluntary manner.
[Portions of opinion omitted for purposes of publication.]

. The Vehicle and Traffic Law mandates that "[e]very person operating a motor vehicle which has been involved in an accident ** * * shall, at the request of a police officer, submit to a [field] breath test” (Vehicle and Traffic Law § 1194 [1] [b]). If the field test indicates that the operator has consumed alcohol then the police may direct that the operator submit to a chemical test pursuant to Vehicle and Traffic Law § 1194 (2) (a) which provides that: "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test * * * administered by or at the direction of a police officer * * * (1) [who has reasonable grounds to believe that the operator was operating a motor vehicle under the influence of drugs and is given] within two hours after such person has been placed under arrest * * * or (2) within two hours after a [field] breath test.”
The New York State Department of Health promulgated rules regarding the administration of blood and breath tests which state that "[a] breath sample shall be collected at the direction and satisfaction of a police officer within two hours of the time of arrest or within two hours of a positive breath alcohol screening test” (i.e., a preliminary breath test [PBT] or a portable [field] breath test like the Alco-Sensor) (10 NYCRR 59.5 [a]). The last amendments to the regulation were made in June of 1987, seven months after the decision in People v Mills (124 AD2d 600 [2d Dept 1986]) giving yet another reason to distinguish the Mills case.

. The then section 71-a of the Vehicle and Traffic Law was created in order to create a situation where all drivers on New York State roads implicitly consent to the taking of a BAG test if it is administered by or at the direction of a police officer who has reasonable grounds to believe that the person is operating a motor vehicle in an intoxicated position. Additionally, the statute allowed a person to refuse to take the test at the cost of losing his license or permit to drive in New York State. The statute was drafted to avoid forcing a suspect to submit to a BAG test against his will (see, Report of Joint Legis Comm on Motor Vehicle Problems, 1953 McKinney’s Session Laws of NY, at 1922). Of course such a statute "has no application” when a defendant consented to the test. However the issue before this court is the relevancy of possibly "stale” evidence.

. See, People v Morgan (209 AD2d 727 [2d Dept 1994]); People v Morales (161 Misc 2d 128 [Crim Ct, Kings County 1994]); People v Abel (166 AD2d 841 [3d Dept 1990]; People v Dixon (149 AD2d 75 [2d Dept 1989]); People v Stelmach (191 AD2d 733 [2d Dept 1993]); People v Stratis (137 Misc 2d 661 [Crim Ct, Kings County 1987]); People v Johnson (NYLJ, Apr. 15, 1991, at 26, col 1 [Sup Ct, NY County]); People v Bezer (NYLJ, Nov. 8, 1991, at 25, col 3 [Crim Ct, Bronx County]); People v Resinger (NYLJ, May 12,1992, at 27, col 1 [Crim Ct, NY County]).

. Justice Holmes in the dissenting opinion to Northern Sec. Co. v United States (193 US 197, 400 [1904]) stated that "[g]reat cases like hard cases make bad law” because they appeal "to the feelings and distorts the judgment.”

. Additionally, the woman’s husband was on his death bed due to lung cancer.

. The defendant after extensive hearings and motion practice pleaded guilty to criminally negligent homicide in return for a promised sentence of five years’ probation, community service, a $500 fine and youthful offender treatment.

. All such (MR) references are to the Mills record on appeal.

. The CPL provides that in any prosecution where there are two or more offenses charged against a single defendant and where one of the charges is for a violation of Vehicle and Traffic Law § 1192, then "chemical test evidence properly admissible as evidence of intoxication” under Vehicle and Traffic Law § 1195 (1), which allows admission of the results of a blood test administered pursuant to Vehicle and Traffic Law § 1194, "shall also, if relevant, be received in evidence with regard to the remaining charges in. the indictments” (CPL 60.75 [emphasis added]).

. The accident occurred at approximately 8:45 p.m. and the police arrived at the scene of the accident soon thereafter. All the participants (the defendant had four other persons in his car [MR 136]) were then brought to a hospital where the arresting officer later arrived. The arresting officer was given a wallet found on the defendant, Mills, by his fellow officers. The wallet contained the driver’s license of Peter McComb, one of the passengers in the defendant’s vehicle. The officer proceeded to talk with the defendant who was talking to the hospital admitting clerk. The defendant told the officer that he was the driver of the automobile involved in the accident, and he was not sure how his friend’s wallet came into his possession. The officer then left the defendant in order to help his fellow officer identify the woman killed in the accident. The officer, next saw the defendant at about 11:00 p.m. outside of the emergency room when another officer informed him that the defendant was willing to take a blood test. However, the defendant changed his mind after talking to a nurse and refused to submit to a chemical test. As a result, the officer decided to contact a Judge in order to obtain a search warrant ordering a blood test, but the Judge did not grant him the order. *555 The officer returned to the defendant at about 12:00 a.m. who was now with his father, a Town Justice. After further observation and questioning, the defendant was arrested. The defendant, after being read his Miranda rights and refusal warnings, consented to the blood test after talking to his father and an attorney over the phone. Mills was given the blood test at 1:15 a.m., only one hour after the "arrest”, but apparently 41/2 hours after tiie accident, with the result of a .12% BAG. The defendant’s attorneys argued that the defendant was, in fact, arrested much earlier, but the issue was never determined by the trial court.

. Surprisingly, the Abel case (supra) did not mention the Keane case (supra), even though one Justice was a member of both unanimous panels.

. For a full discussion of the two-hour rule and driving while intoxicated in general, see, Gerstenzang, Handling the DWI Case in New York (1987 ed, 1989 Supp); Fiandach, New York Driving While Intoxicated (1992 ed, 1993 Supp); Fiandach, New York DWI Bulletin (vol 1, Nos. 10, 11 [1994]).

. The United States Supreme Court held that the Frye test was superseded in Federal courts by the Federal Rules of Evidence in Daubert v Merrell Dow Pharms. (509 US 579 [1993]). New York which does not model its evidence "rules” on the Federal code still follows the Frye standard (see, People v Wesley, 83 NY2d 417 [1994]; People v Weinstein, 156 Misc 2d 34 [Sup Ct, NY County 1992]).

. The reliability of a chemical test to determine whether a person is intoxicated depends on two important factors, time and tolerance (see, Erwin, op. cit, §§ 15.01, 16.04). "The time referred to is that between the testing * ** * the occurrence of the material event, and the consumption of alcohol” (ibid.). J.K.W. Ferguson, a professor of pharmacology, and R.G. Bell, director of the Bell Clinic, in a paper presented to the Second International Conference on Alcohol and Road Traffic stated that "maximum accuracy is attained about two to three hours after drinking when the limits of confidence with a probability of 95% may be plus or minus 20% ” (reprinted in part in Erwin, op. cit, § 16.04).

. Some authorities even say that a time period of two hours is too long. The problem is that a BAG level obtained an hour or two after operating a motor vehicle can be equally consistent with two contrary propositions. The test value could indicate a BAG of the same value or higher at the earlier time or it could indicate a much lower "and perhaps exculpatory BAG value at the time” of driving (Fitzgerald and Hume, The Single Chemical Test for Intoxication: A Challenge to Admissibility, 66 Mass L Rev 23, 32 [1981]).

. See generally, King and Tipperman, The Offense of Driving While Intoxicated: The Development of Statutory and Case Law in New York (3 Hofstra L Rev 541 [1975] [tracing the history of New York’s DWI laws]); Ostrowski, Drunk Driving and Chemical Tests — A Labyrinthine Maze (63 NY St Bar J 22 [Dec. 1991]).

. The American Medical Association’s Committee on Problems of Motor Vehicle Accidents issued a report in 1939 which established the three zones of influence used in the statute (see, 112 AMA J 2164 [1939]). In 1941, Dr. Henry Newman in his book Acute Alcoholic Intoxication (Stanford Univ Press) noted that the time variable had been studied as early as 1919 by E. Mellanby and stated that "we must not only know the subjects inherent and acquired tolerance to alcohol, but must also be in possession of information regarding the trend of his blood alcohol curve at the time, since this will in large measure determine the intoxicant effect.” (Reprinted in part in Erwin, op. cit., § 14.10.) Additionally, 1941 was only "three years after the National Safety Council’s landmark study which correlated blood alcohol and fitness to drive” (Fiandach, New York DWI Bulletin, vol 1, No. 10 [July 28, 1994]).

. Legislative history indicates that the Governor in proposing these amendments made only "a number of clarifying and conforming amendments” to section 1194 of the Vehicle and Traffic Law (Governor’s Mem approving L 1970, ch 275, 1970 McKinney’s Session Laws of NY, at 3085-3086).

. Section 1194 (2) governs noncompulsory chemical tests. Section 1194 (3) governs court-ordered compulsory tests. Section 1194 (2) (a) and (3) (b) specify when such tests are authorized and, unless authorized, the tests are inadmissible under Vehicle and Traffic Law § 1195 (1). Section 1194 (3) (compulsory tests) contains no two-hour requirement while section 1194 (2) (a) (noncompulsory tests) contains such a limit.

. The United States Supreme Court has held that there is no right to refuse a BAG test as there is no constitutional protection for blood, breath or urine (Schmerber v California, 384 US 757 [1966]). "Schmerber, then, clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood-alcohol test” (South Dakota v Neville, 459 US 553, 559 [1983]).
However, New York has created a statutory right to refuse in section 1194 (2) (b) of the Vehicle and Traffic Law which states that: "If such person having been placed under arrest or after a [field] breath test indicates the presence of alcohol in the person’s system and having thereafter been requested to submit to such chemical test and having been informed that the person’s license * * * shall be immediately suspended and subsequently revoked for refusal to submit to such chemical test * * * [then] refuses to submit to such chemical test * * * the test shall not be given”.
Evidence of the refusal may then be admitted into evidence provided that the person who refused to take the test "was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal” (Vehicle and Traffic Law § 1194 [2] [f]).