OPINION OF THE COURT
Matthew A. Sciarrino, Jr., J.
*361 After a combined Ingle/Huntley/Dunaway hearing, this court held that evidence of the defendant’s refusal, which took place over two hours after his arrest, could not be used at trial. Officer Vincent Candullo, a seven-year veteran of the Triborough Bridge and Tunnel Authority (TBTA), testified for the People. This is the written confirmation of an oral decision rendered on that case.
Facts
On December 2, 2004, at 10:20 p.m., Officer Candullo was collecting tolls in cash lane No. 19 on the Staten Island side of the Verrazano Narrows Bridge. Officer Candullo observed the defendant approaching his lane in an erratic manner. The officer testified that he saw the defendant veer left and right, and it appeared that he was having extreme difficulty navigating his way into his lane. When the defendant finally made his way into the lane, he extended his hand out of his vehicle. In his hand was a one dollar bill. The toll for the Verrazano Bridge was $8.[1]
When the officer saw the one dollar bill, he told the defendant that he needed more money. Officer Candullo testified that he then noticed that the defendant was rather flushed and was having a difficult time in locating the sufficient funds. The officer also testified that money was strewn around the passenger seat, and that there was a lot of “paperwork” on the seat. He testified that the inside of the car looked like it was in disarray and that he saw an open wallet with bills. The defendant was flushed, unresponsive, and “fondling [sic]” his wallet and money.
The officer then stepped out of the booth and moved toward the defendant’s window. He testified that the odor of alcohol “hit him in the face.” He indicated that the defendant exhibited the “classic signs” of an inebriated driver. When the defendant was then asked if he had been drinking, the defendant responded: “[N]o.” The officer then asked the defendant for his license and registration. He was unable to produce his registration. The defendant grew argumentative, and was speaking with a slurred and irregular speech pattern. The officer called for his supervisor. The officer then told the defendant to shut off the vehicle, and hand him the keys. They left the vehicle in cash lane No. 19. The defendant was not free to leave at this point. This was approximately 10:23 p.m.
*362 Upon exiting the vehicle, the defendant seemed unsteady on his feet. The officer testified that he “had to hold him up slightly.” The officer then escorted the defendant to the sergeant’s booth located in lane No. 15. In the booth, upon questioning by the officers, the defendant stated: “Yes, I did have a couple of drinks.” At approximately 10:30 p.m., the officer requested that the defendant take a field sobriety test, as well an aleo-sensor test. The defendant refused. The officer testified that he told the defendant that if he refused to take the test, he was going to be arrested, but if he took it, they would only give him a summons. The defendant was never warned that his refusal to take the test would result in the loss of his license. While the defendant, a Department of Motor Vehicles Administrative Law Judge, would have been aware of the consequences of his action, he must still be warned.
At 10:35 p.m., the defendant was formally arrested by the officer for “driving under the influence,” based upon his observations of the defendant’s bloodshot eyes, emanating odor of alcohol, and his refusal to take the field sobriety and alco-sensor tests. The defendant was placed in handcuffs. The officer testified that the defendant became quite violent and kicked Sergeant Jose Pineda, and grabbed for the officer’s “private parts.” The officers that were present huddled around the defendant and forcibly brought the defendant to patrol vehicle No. 736.
While en route to the 120 Precinct and after exiting the Staten Island Expressway, the officers were called back, as Officer Candullo had forgotten to count and drop his funds bag from the toll booth. The officer testified that the financial practice of the TBTA is to drop off funds and count them prior to 11:00 p.m. The patrol car turned around and headed back to the toll plaza. Officer Candullo went back to his lane, picked up his “funds bag,” and brought it to the sergeant’s booth. He then proceeded to count his funds, and prepared the necessary documentation. This process took over 45 minutes. All the while, the defendant remained in the patrol car.
Upon completion, they re-embarked on their journey to the 120 Precinct. While in the patrol car, the defendant stated: “Drop me at a park bench. Leave me somewhere like it didn’t happen.” When they finally arrived at the 120 Precinct, the officer testified that the defendant was for the first time read his Miranda rights. The officer also indicated that he did not record this in his memo book. He testified that he read the defendant *363 his Miranda rights from a card (Miranda v Arizona, 384 US 436 [1966]). He stated that the defendant understood his rights. The defendant stated that he did not want to be questioned. He never invoked his right to counsel. The defendant was charged with operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [3]) and obstructing governmental administration in the second degree (Penal Law § 195.05).
At 12:40 a.m., more than two hours after the defendant’s arrest, the defendant was taken into a room so that a chemical test could be administered. The defendant was expressly told by the officers that it was over two hours since his arrest, and he was asked if he would consent to the test, notwithstanding its lateness. The defendant responded: “No, Sir.” The officer warned the defendant that his license would be suspended if he refused to take the test. The defendant stated: “There would be no penalty after 2 hours?” (Emphasis added.) The officer responded: “That is correct, there will be a criminal penalty.” (Emphasis added.) To which the defendant responded: “No, I will not take the test.” No test was administered.
Discussion
Refusal and the Two-Hour Rule
In conducting a Vehicle and Traffic Law § 1194 analysis, time and accuracy of evidence are controlling issues in determining relevance and overall admissibility. The two-hour rule was codified in Vehicle and Traffic Law § 1194 (2) and the New York State Department of Health Regulations (10 NYCRR 59.2 [c] [2]) in 1941 because “the human body rapidly metabolizes alcohol, the two-hour requirement was enacted to ensure that the results of the blood test constituted probative evidence of the defendant’s blood alcohol level at the time of the operation of the vehicle.” {See, Mem of Assemblyman Peterson in Support, Bill Jacket, L 1941, ch 726.) In People v Victory (166 Misc 2d 549, 556 [Crim Ct, Kings County 1995]), the court held that “[i]n order to have some consistency and reliability, evidence should not be admissible, . . . if it is not probative, competent or relevant, i.e., scientifically acceptable.”
New York accepts the Frye test in dealing with the issue of whether evidence is scientifically reliable (People v Wesley, 83 NY2d 417, 422 [1994]). The test is whether the accepted scientific techniques, when properly performed, generate results accepted as reliable within the scientific community generally (Wesley at 422). In Clemente v Blumenberg (183 Misc 2d 923, *364 932 [Sup Ct, Richmond County 1999]), the court maintained that “[a] Trial Judge’s role as a gatekeeper of evidence ... is an inherent power of all trial court Judges to keep unreliable evidence (‘junk science’) away from the trier of fact.” The courts hold a special duty to ensure that evidence of such a “conclusive” nature is not shown to the trier of fact unless it is certain that the test results are competent evidence. (Victory, supra at 558.)
In the instant case this court deals with the applicability of the two-hour rule to chemical test refusals. Lower courts have come to different conclusions on this issue, citing the Appellate Division, Second Department, decision in People v Mills (124 AD2d 600 [2d Dept 1986]). However, the Mills court has been consistently misread and misapplied since the decision was rendered.[2] Mills dealt with a defendant charged with criminally negligent homicide, and a defendant who was given a chemical test after his express consent, and within one hour of the arrest, it was not a refusal case. (Id.) The Appellate Division of the Fourth Department in People v Brol (81 AD2d 739, 740 [4th Dept 1981]) held that if the test is not administered within two hours, the evidence of a refusal is deemed incompetent, and will not be allowed consideration by the jury. This decision was in accord with the vast scientific data that points to an inaccurate determination of toxicity after a period of time. If the science is inaccurate, and is not a precise indicator of the actual blood alcohol content (BAG) at the time of the motorist’s operation of the vehicle, the courts cannot aptly adjudicate these matters within the scope of Vehicle and Traffic Law § 1194, at the defendant’s or the People’s peril. “[B]ad science makes bad law” (Victory at 557). It is as clear as that. State legislatures and often courts make an assumption about BACs that does not properly take the scientific information concerning alcohol absorption into account. Specifically, they presume that the defendant’s BAG at the time of the test will be lower than his BAG at the time of the operation of the motor vehicle; this is not always true.[3]
Some courts have maintained that “considering the reasoning in Brol (supra) in conjunction with several subsequent decisions interpreting the scope of the two-hour rule, it seems clear that *365 today the rule has no application in a determination of the admissibility of evidence that a defendant refused a chemical test” (People v Ward, 176 Misc 2d 398, 401 [Sup Ct, Richmond County 1998]).[4] This court respectfully disagrees. Mills stands for the requirement that the blood sample must be obtained within two hours after arrest, unless an express manifestation of consent has been given. (See Mills at 601; People v Atkins, 85 NY2d 1007 [1995].) In the instant case we deal with a refusal after the two-hour period has tolled based upon police error and folly. Clearly, Vehicle and Traffic Law § 1194 was not meant to protect incompetent police officers who dally in their effort to bring a defendant to the police station. Such protection would only serve to corrupt the results of a chemical test, and make them scientifically inaccurate.
In Vehicle and Traffic Law § 1194 (2) (b), New York created the statutory right to refuse the administration of a chemical test:
“(1) If: (A) such person having been placed under arrest; or (B) after a [field] breath test indicates the presence of alcohol in the person’s system; . . . and having thereafter been requested to submit to such chemical test and having been informed that the person’s license . . . shall be immediately suspended and subsequently revoked . . . for refusal to submit to such chemical test . . . [then] refuses to submit to such chemical test . . . the test shall not be given.”
Evidence of the refusal may then be admitted into evidence provided that the person who refused to take the test “was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal” (Victory, supra at 562, quoting Vehicle and Traffic Law § 1194 [2] [f]).
In the instant case, the defendant was held in custody for more than two hours before he was asked to consent to the chemical test at the precinct. The officers wasted a significant amount of time in the transportation of the defendant from the scene of the alleged violation, toward the precinct, and then back to the toll plaza for counting Officer Candullo’s funds, and then traveling back to the precinct for booking. The “two-hour rule” provides that a chemical test must generally be adminis *366 tered within two hours of either the time of arrest for a violation of Vehicle and Traffic Law § 1192 or the time of a positive breath screening test, whichever is later. Notwithstanding the fact that the officers gave the defendant an improper and equivocal warning, which will be discussed infra, the evidence of the refusal is suppressed based upon the tolling of the two-hour rule. Two hours should mean two hours, absent a knowing waiver and consent to take the test.
This court maintains that Vehicle and Traffic Law § 1194 is both evidentiary and procedural. The effect of the McGrath decision was not to thrust Vehicle and Traffic Law § 1194 solely into the “procedural” realm (People v McGrath, 135 AD2d 60 [2d Dept 1988]). In fact, the Court made reasonable assumptions regarding admissibility of evidence. The Court, in dicta, maintained that
“[i]t is reasonable to assume that the intervention of an impartial Magistrate in the issuance of an order for a chemical test insures that the test will not be administered at a time so remote that the results are irrelevant to the central question of the driver’s blood alcohol count at the time of the accident” (McGrath at 62).
The court assumes that the Magistrate will formulate issues of admissibility of evidence prior to the issuance of a court ordered chemical test, which naturally would be admissible after the fact. Therefore, the decision does not change the character of Vehicle and Traffic Law § 1194 as an evidentiary statute, regardless of the merger of the consent clause. Waiver or consent will not vitiate the lack of reliability, relevance, and probativeness, and such areas may be challenged by defense counsel. It is only when the test is administered within two hours does it get a presumption of relevance and reliability (Victory, supra at 558). Gamesmanship by the police, prosecutors, defense attorneys, and even the courts should not override the legislatively mandated rule of two hours from arrest which arguably is based upon some scientific rationale.[5]
First, this defendant was never warned in clear and unequivocal language that his initial refusal to the field test would result in a license suspension. In fact, he was told by the TBTA officer that he would be arrested if he failed to take it, but if he *367 just took the test he would only have been given a summons. Thereafter, at the precinct, the defendant clearly asked the police officer if there would be no penalty after two hours. The officer said: “That is correct.” (Emphasis added.) This is not an unequivocal warning. Not only is it equivocal, it is also incorrect. When an officer issued an incorrect warning, as he did in Matter of Gargano v New York State Dept. of Motor Vehs. (118 AD2d 859 [2d Dept 1986]), the Court held that the motorist’s license would not be revoked and the evidence of the refusal should likewise be suppressed at any trial, proceeding, or hearing resulting from the arrest.
Accordingly, the evidence of the defendant’s refusal to submit to the field breath test and the custodial chemical test are suppressed.
Dunaway/Ingle Issues
The officer testified that the defendant was having a difficult time in navigating his way into the toll lane. The rule is that a police officer is authorized to stop a motor vehicle driven on a public highway when a police officer observes or reasonably suspects a violation of the Vehicle and Traffic Law (People v Schroeder, 229 AD2d 917 [4th Dept 1996]). This officer did not have to stop this defendant in order to come into contact with him. He stopped his vehicle on his own, and handed a one dollar bill to the officer. In Matter of Gagliardi v Department of Motor Vehs. (144 AD2d 882 [3d Dept 1988]), the Court held that a police officer had reasonable grounds to arrest the motorist for drunk driving where the police officer detected alcohol on the motorist’s breath, saw him stagger, and observed that his eyes were glazed. Likewise, this court finds that there was probable cause to arrest this defendant based upon the officer’s observations of the defendant, including his staggering gait, slurred speech, bloodshot eyes, and emanating odor of alcohol (People v Ingle, 36 NY2d 413, 415 [1975]). Moreover, the defendant did not argue at the hearing as to a failure of probable cause to arrest.
Accordingly, the defendant’s Dunaway motion is denied.
Huntley Issues
This court finds the testimony of the TBTA officer to be less than credible as to the administration of Miranda warnings (Miranda, supra). Accordingly, it finds that the defendant was arrested when he was directed to shut off his vehicle and step out. A reasonable person, under the similar circumstances, *368 would not have felt free to leave, or free to decline the officer’s requests or otherwise terminate the encounter. Therefore, he was “seized” for Fourth Amendment purposes and in custody at that point (People v McIntosh, 96 NY2d 521, 530 [2001]). The defendant’s Miranda rights should have been triggered at the time he was brought into the sergeant’s booth, as the defendant was undergoing custodial interrogation (Miranda, supra). The defendant’s legal background does not vitiate the improper police conduct, or insulate the defendant from his right to be formally apprised of his Miranda rights.
Accordingly, all of the defendant’s statements are suppressed.

. The toll went up to $9 on March 13, 2005.

. John M. Shields, Admissibility of DWI Chemical Test Results Obtained After the Two Hour Limit Has Expired, 70 NY St BJ 58 (Sept./Oct. 1998).

. J. Pariser, Note, In Vino Veritas: The Truth about Blood Alcohol Presumptions in State Drunk Driving Law, 64 NYU L Rev 141 (1989).

. The Ward court pointed to the litany of cases between the 1986 decision of People v Mills (124 AD2d 600 [2d Dept 1986]) and its 1998 decision.

. Peter Gerstenzang, Handling the DWI Case in New York ch 31 (West 2005); Fiandach, New York Driving While Intoxicated (Lawyers Co-Op 1992 and 1993 Supp).