OPINION OF THE COURT
Martin Marcus, J.
*606 In this case the defendant was charged with aggravated driving while intoxicated (DWI) per se in violation of Vehicle and Traffic Law § 1192 (2-a), and related crimes.[1] After a hearing conducted on October 31, 2008,1 denied the defendant’s motion to suppress the results of a breathalyzer test, finding that she had voluntarily consented to its administration. Based on the fact that the test was administered more than three hours after her arrest, the defendant moved for another pretrial hearing, this one to decide whether the test was relevant in determining the alcohol level in her blood more than three hours earlier. After consideration of the parties’ oral and written submissions, and for the reasons set forth below, I denied the defendant’s motion.
According to the facts adduced at the suppression hearing, at approximately 1:10 a.m. on February 4, 2007, Officer Andrew Hernandez observed the defendant seated in the driver’s seat of a stationary motor vehicle inside a public park which had closed after dark. The keys were in the ignition of the vehicle, and the engine was running. Upon approaching the defendant, Officer Hernandez smelled alcohol on her breath and noticed that her face was flushed and her eyes were watery. Once the defendant complied with Officer Hernandez’s request to step out of the vehicle, Officer Hernandez observed that she had difficulty keeping her balance. Concluding that the defendant was intoxicated, Officer Hernandez placed her under arrest at approximately 1:17 a.m.
Officer Hernandez and the defendant arrived at the 45th Precinct at approximately 1:40 a.m., but had to wait while earlier DWI arrests were processed. At about 4:23 a.m., another police officer, Officer Kennedy, asked the defendant whether she was willing to take the breathalyzer test and she said, “yes.” The process of calibrating the machine began immediately, and the test was administered at 4:30 a.m. The test indicated that the defendant had a blood alcohol level of .194 of one percent.
Section 1194 of the Vehicle and Traffic Law sets forth the authority of the police to test a person’s blood or breath to determine the alcoholic content in her blood. A person who operates a motor vehicle in this state is “deemed to have given *607 consent to [such] a chemical test” when three requirements are met: the test is administered “by or at the direction of a police officer”; the officer has reasonable grounds to believe the person had been operating the vehicle in violation of any subdivision of Vehicle and Traffic Law § 1192; and the test is conducted “within two hours after such person has been placed under arrest for any such violation.” (Vehicle and Traffic Law § 1194 [2] [a] [1].) The Court of Appeals has held that when the requisite reasonable grounds exist, even an unconscious person is “deemed to have given consent” to a chemical test, so long as the test is conducted within the two-hour limit. (People v Kates, 53 NY2d 591 [1981].) Because a person is “deemed to consent” to a test given within two hours of arrest, if the test is requested within that time, but the person in fact refuses to submit to it, evidence of the refusal is admissible at trial “upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal.” (Vehicle and Traffic Law § 1194 [2] [f]; see People v Thomas, 46 NY2d 100, 103 [1978] [rejecting claim that allowing evidence of refusal to he submitted to jury violates defendant’s privilege against self-incrimination].)
Given the requirements of Vehicle and Traffic Law § 1194 (2) (a) (1), when more than two hours have passed since a defendant’s arrest, the defendant is no longer “deemed to have given consent” to the chemical test. The question thus arises whether, when the defendant expressly consents to the test under such circumstances, its results are admissible at trial. The Court of Appeals has definitively answered this question. In People v Atkins (85 NY2d 1007, 1008-1009 [1995]), the defendant had “expressly and voluntarily consented to administration of the blood test” within two hours of his arrest, but the test was not conducted until more than two hours after it. Rejecting the argument that the two-hour time limit is “an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver’s consent,” the Court unequivocally held that “the two-hour limitation contained in Vehicle and Traffic Law § 1194 (2) (a) has no application here” {id. at 1009).
Even before Atkins, in People v Mills (124 AD2d 600 [2d Dept 1986]), the defendant, who had been involved in a fatal automobile accident, moved to suppress the results of a blood test administered with his consent because the People had failed to establish that the test was administered within two hours of *608 his arrest. The Second Department upheld the denial of the motion, holding that “[t]he requirement that the blood sample be obtained within two hours after arrest... is relevant only with regard to blood samples obtained in cases where no express consent has been given.” (124 AD2d at 601.)
Not surprisingly, “since Atkins, appellate courts have consistently ruled that the two-hour rule has no application where actual, uncoerced consent is given.” (People v Burns, 13 Misc 3d 1208[A], 2006 NY Slip Op 51731[U], *4 [Nassau Dist Ct 2006] [citations omitted]; see People v Zawacki, 244 AD2d 954, 955 [4th Dept 1997] [noting that “the Court of Appeals has held that the two-hour limit is inapplicable to chemical tests administered pursuant to defendant’s actual consent”]; People v Turner, 234 AD2d 704, 706 [3d Dept 1996] [“defendant’s consent to the test renders the two-hour limit inapplicable”], citing Atkins.)
Pointing to several lower court decisions, the defendant nonetheless insists that another pretrial hearing is necessary before the results of a test administered with the defendant’s consent more than two hours after arrest may be admitted at trial. In People v Victory (166 Misc 2d 549, 550 [Grim Ct, Kings County 1995]), the court held that:
“upon objection of the defense, the prosecution must establish, at a hearing by expert testimony, scientific evidence that a blood-alcohol content (BAG) test taken more than two hours after the arrest of the defendant is competent, reliable and probative of the fact that the defendant was impaired or intoxicated when he operated a motor vehicle before such results may be admitted as relevant evidence at the trial.”
Relying on Judge Simons’ dissent in Atkins,[2] and secondary scientific sources concerning the measurement of alcohol in an individual’s blood, the court determined that “there [was] ample scientific evidence that the delay between the time of the arrest and the time a chemical test is given might significantly reduce the reliability of the evidence if that time period is too great.” (166 Misc 2d at 558-559.)
*609 A few trial courts have followed Victory. (See e.g. People v Holbrook, 20 Misc 3d 920 [Sup Ct, Bronx County 2008] [evidence of breathalyzer test suppressed where prosecution failed to establish the scientific reliability of test results obtained more than two hours after arrest]; People v Kenny, 9 Misc 3d 1104[A], 2005 NY Slip Op 51395[U], *5 n 9 [Grim Ct, Richmond County 2005] [“Even though admissible, the scientific relevancy of a BAG test administered after two-hours may still be challenged by the defendant as the test results are no longer presumed to be accurate”].)
However, requiring the pretrial hearing ordered in Victory would undermine the judicial recognition of the reliability afforded to the breathalyzer test more than three decades ago. (People v Donaldson, 36 AD2d 37 [4th Dept 1971].) Indeed, since Donaldson was decided, it has been unnecessary for the prosecution to introduce “expert testimony as to the nature, function or scientific principles underlying” the test. (36 AD2d at 40.) As long as the People establish that “the testing device was in proper working order at the time the test was administered to the defendant and that the chemicals used in conducting the test were of the proper kind and mixed in the proper proportions,” the results of the testing are admissible. (People v Freeland, 68 NY2d 699, 700 [1986] [citations omitted].) The novel requirement pronounced by Victory ignores this longstanding precedent.
In reaching its conclusions, Victory also brushed aside the determinations the Legislature made in enacting the statutory scheme of Vehicle and Traffic Law § 1194. As the Court of Appeals recognized in Atkins when it rejected a per se rule against the admission of the results of tests administered more than two hours after arrest, the argument that such tests are — or, as in this case, may be — irrelevant in determining the defendant’s blood alcohol level at the time of arrest, “is completely undermined by the lack of a corresponding time limit for court-ordered chemical testing under section 1194 (3) . . . or [for] the additional test which the driver must be permitted to have administered by a physician of his or her choosing under section 1194 (4) (b).” (People v Atkins, 85 NY2d at 1009.)[3]
*610 Similarly, when the operator of a vehicle is arrested a substantial period of time after his operation of the vehicle, a test administered within two hours of arrest, but well more than two hours after the vehicle’s operation, is nonetheless admissible under Vehicle and Traffic Law § 1194 (2) (a). (See People v Marietta, 18 Misc 3d 1109[A], 2007 NY Slip Op 52476[U], *6 [Sup Ct, Kings County 2007] [test results admissible where defendant deemed to be under arrest at 6:10 a.m., even though accident had occurred at about 3:38 a.m., because breath test administered at 7:44 a.m.].)
Most significantly, the requirement imposed in Victory ignores the import and plain language of Atkins by failing to give due recognition to the Court of Appeals’ rejection of the “contention that the two-hour limitation in section 1194 (2) (a) was intended by the Legislature to be an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver’s consent.” (People v Atkins, 85 NY2d at 1009.) Although
“the two-hour rule . . . may at one time have been intended to insure that chemical tests were administered within a reasonable period of time from when the operator was driving so as to insure a reliable correlation between the blood alcohol level revealed in the test result and the blood alcohol level at the time of the vehicle’s operation” (People v Marietta, 2007 NY Slip Op 52476[U], *3-4), neither Atkins nor any provision of Vehicle and Traffic Law § 1194 supports the notion that the prosecution must dem *611 onstrate either the reliability or the relevance of tests administered more than two hours after arrest.
When properly administered, the reliability of the breathalyzer test is not in question. The Victory court’s concern with the use a jury may make of the results of a test voluntarily taken more than two hours after arrest is, of course, legitimate, but this issue goes to the weight rather than admissibility of such evidence. While one or both parties can, and in some cases, should call an expert to testify at trial concerning this issue, and, with or without expert testimony, can raise it through cross-examination and argue it to the jury, a pretrial hearing is simply not mandated. For these reasons, I denied the defendant’s motion for such a hearing.

. The defendant was also charged with driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2]), driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). On January 30, 2009, after a trial by jury, the defendant was acquitted of all counts.

. “The two-hour limitation is a legislative determination on relevance: if the sample has not been taken within two hours the evidence is inadmissible. The rule the majority establishes ignores the probative uses of the test, suggesting that somehow there is less need for a reliable blood test where defendant has ‘actually’ consented to it. An untimely test does not become more reliable, however, just because the driver voluntarily consented.” {People v Atkins, 85 NY2d 1007, 1009 [1995, Simons, J., dissenting].)

. Concerning court-ordered testing, see People v McGrath (135 AD2d 60, 62 [2d Dept 1988], affd 73 NY2d 826 [1988]), in which the Court reviewed the language of Vehicle and Traffic Law § 1194-a, which formerly governed court-ordered chemical tests, and found that “[n]othing in the unambiguous *610 language of Vehicle and Traffic Law § 1194-a indicates that the Legislature intended to impose a specific time limitation on the performance of court-ordered chemical tests.” The court reasoned that
“omission of such a restriction reflects a rational legislative determination that it was unnecessary. It is reasonable to assume that the intervention of an impartial Magistrate in the issuance of an order for a chemical test insures that the test will not be administered at a time so remote that the results are irrelevant to the central question of the driver’s blood alcohol count at the time of the automobile accident.” (135 AD2d at 62.)
Concerning independent testing, see People v Finnegan (85 NY2d 53 [1995]), in which the Court held that Vehicle and Traffic Law § 1194 (4) (b), which permits a “person tested ... to choose a physician to administer a chemical test in addition to the one administered at the direction of the police officer,” does not require that the additional test be conducted within two hours of the defendant’s arrest. The Court noted that “[n]othing in the unambiguous language of Vehicle and Traffic Law § 1194 (4) (b) indicates that the Legislature intended to cross-reference or incorporate the official test time limitation into obtaining the independent test.” (85 NY2d at 59.)