OPINION OF THE COURT
Stephen Rooney, J.
Defendant is charged with operating a motor vehicle while *399 under the influence of alcohol as a felony in violation of Vehicle and Traffic Law § 1192 (3). The defense contends the police had no basis for the initial stop of the defendant, that defendant’s Fourth Amendment rights were therefore violated, and that all evidence obtained thereafter is suppressible as fruit of the illegal stop. Defendant also argues that his refusal to submit to a chemical test was obtained more than two hours after his arrest and therefore is inadmissible pursuant to Vehicle and Traffic Law § 1194. The People maintain that the defendant’s arrest was lawful, and that evidence of a refusal is admissible even if obtained more than two hours after arrest. In this regard a combined Dunaway /Huntley /Mapp hearing was held before this court with two witnesses testifying: Officer Larry Holmes of the United States Park Police and Officer Lewis Morales of the Staten Island Highway Unit. Both officers were credible.
FINDINGS OF FACT
On May 27, 1997 at about 7:26 p.m., Officer Holmes was traveling southbound on Cedar Grove Avenue, Staten Island, New York, when he observed the defendant throw an object from the driver’s side window of a black pickup truck parked on the roadside. The defendant then began to drive the truck northbound on Cedar Grove Avenue. Officer Holmes turned on his rotating lights and used his vehicle to block the road. The defendant’s vehicle stopped about five feet from the officer’s vehicle. Officer Holmes observed the defendant reach down toward the ignition switch and throw what appeared to be keys into the bushes. The defendant then exited his vehicle and staggered toward the police vehicle, asking why he was being stopped and stating he had done nothing wrong. His speech was slurred and thick. Officer Holmes then had a conversation with the defendant concerning the littering he had observed. During the conversation the defendant said he had had one beer. The officer asked defendant if he was on any medication and defendant said “no”. Officer Holmes could now detect a strong odor of alcohol from the defendant and asked him to perform certain field sobriety tests. During the horizontal gaze nystagmus test, Officer Holmes noticed defendant’s eyes'were bloodshot and his eye movement was very bouncy. During the 10-pace walk and turn test, the defendant stepped offline at least twice and failed to make the proper heel to toe connection numerous times. The officer then advised the defendant he was *400 under arrest. Defendant was transported to the Park Police office by another officer at about 7:55 p.m. Officer Holmes recovered the object originally thrown (an empty Budweiser beer can) from the roadside. Two additional empty Budweiser cans were found nearby. A small cooler containing four unopened cans of Budweiser was recovered from defendant’s pickup. Officer Holmes unsuccessfully attempted to locate defendant’s keys. He returned to the Park Police office at about 8:10 p.m., and began filling out paperwork concerning the arrest. The defendant was again asked if he was on any medication and he replied, “Yes, an asthma inhaler.” He was also asked about prior arrests, and responded that he had prior driving while intoxicated cases and various traffic violations. At about 8:40 p.m. the defendant was transported to the 120 Precinct for a breathalyzer test. The test was delayed because of the unavailability of the assigned Intoxicated Driver Testing Unit (I.D.T.U.) officer. Eventually, Officer Morales, another member of the I.D.T.U., was summoned to the precinct, arriving at about 10:05 p.m. As he prepared the equipment in the I.D.T.U. room he heard the defendant, in another room, speaking in a loud, combative and argumentative manner. Subsequently, the defendant was escorted to the testing room. He stopped at the threshold and refused to enter. Officer Morales explained the testing procedure to the defendant, who remained in the doorway and refused to take the test. The officer next asked the defendant to perform physical coordination tests in front of the video camera. The defendant refused. Defendant was asked to make a video of his refusal. Defendant declined that request also. Officer Morales read defendant the consequences of a refusal from the police department’s intoxicated driving examination instruction sheet. This item was entered into evidence at the hearing and contained the statutory warnings required by Vehicle and Traffic Law § 1194 (2) (b) (1); (c) and (f). The defendant persisted in his refusal. At 10:25 p.m. Officer Morales concluded his interaction with the defendant and noted the refusal.
CONCLUSIONS OF LAW
Defendant’s Dunaway motion is denied. The defense concedes that littering on a public highway is a violation of the Vehicle and Traffic Law. (Vehicle and Traffic Law § 1220.) The officer’s initial stop of defendant’s vehicle was therefore lawful. (People v Ingle, 36 NY2d 413 [1975].) Thereafter, the officer’s observations of defendant, including his staggering gait, slurred *401 speech, and bloodshot eyes, as well as the field sobriety test results, established probable cause to arrest the defendant for driving while intoxicated. (People v Blajeski, 125 AD2d 582 [2d Dept 1986].)
Defendant’s Huntley motion is granted in part and denied in part. The People concede that statements made at the Park Police office were “custodial and pre-Miranda”. The motion is granted as to these statements. Defendant’s initial statements, made on Cedar Grove Avenue, asking why he was being stopped and denying any wrongdoing, were spontaneous. Defendant’s ensuing statements, that he had had one beer and “no” in response to the inquiry concerning medication, were made during a temporary roadside detention pursuant to a routine traffic stop. This was not a custodial setting, and Miranda warnings were not required. (People v Bennett, 70 NY2d 891 [1987]; People v Mathis, 136 AD2d 746 [2d Dept 1988].) Defendant’s Huntley motion is denied as to these statements made on Cedar Grove Avenue.
Defendant’s Mapp motion as to the beer in the cooler is also denied. A valid arrest for a crime authorizes a warrantless search of a vehicle and of a closed container visible in the passenger compartment of the vehicle which the arrested person is driving when the circumstances give reason to believe that the vehicle or its visible contents may be related to the crime for which the arrest is being made. (People v Belton, 55 NY2d 49 [1982].) Such is the case here with the cooler and its contents which were, therefore, properly seized.
Finally, defendant argues that evidence of a refusal to take the chemical test must be suppressed as the test was not offered until more than two hours after the arrest, in violation of Vehicle and Traffic Law § 1194 (2) (a). That section provides that anyone who operates a motor vehicle impliedly consents to the administration of a chemical test to determine blood alcohol content. Clause (1) of that section provides that the test must be administered within two hours of the arrest. The defendant contends that when the test is belatedly offered, evidence of a refusal to take it should be suppressed. The Court of Appeals has not specifically addressed this issue, and the only appellate decision squarely dealing with it, People v Brol (81 AD2d 739), a 1981 Fourth Department case, found such evidence to be incompetent. Nevertheless, considering the reasoning in Brol (supra) in conjunction with several subsequent decisions interpreting the scope of the two-hour rule, it seems clear that today the rule has no application in a determination *402 of the admissibility of evidence that a defendant refused a chemical test.
The Brol Court, having interpreted the statute to require that the admissibility of a chemical test into evidence against the operator of a motor vehicle hinged on its being administered within the two-hour time limit, logically concluded that evidence of a refusal must be similarly circumscribed: “But if the test’s results are incompetent if the test is not administered within the two-hour limit, evidence of the refusal is similarly incompetent evidence against defendant unless obtained within two hours of the arrest.” (People v Brol, supra, at 740.)
In 1986, the Second Department decided that the two-hour limit is relevant only where no express consent to a chemical test has been given. (People v Mills, 124 AD2d 600.) In 1988, the same Department held that the two-hour limit had no application to court-ordered chemical tests authorized by Vehicle and Traffic Law § 1194 (3). (People v McGrath, 135 AD2d 60, affd on opn below 73 NY2d 826 [1988].) In February 1995, the Court of Appeals held that the time limit had no bearing on the independent chemical test authorized by Vehicle and Traffic Law § 1194 (4) (b). (People v Finnegan, 85 NY2d 53.) And finally, in People v Atkins (85 NY2d 1007), decided in June 1995, the Court reached the same conclusion the Second Department had reached in People v Mills (supra): the two-hour limitation of Vehicle and Traffic Law § 1194 (2) (a) has no application where a defendant expressly consents to a chemical test. Citing People v McGrath (supra) and People v Finnegan (supra) and the lack of any statutory time limits for, respectively, court-ordered tests (Vehicle and Traffic Law § 1194 [3]) and independent chemical tests (Vehicle and Traffic Law § 1194 [4]), the Court determined that the two-hour limit of Vehicle and Traffic Law § 1194 (2) (a) was not intended by the Legislature to be an absolute rule of relevance proscribing admission of test results obtained after such a time period regardless of the driver’s consent.[1]
The upshot of these cases, which have progressively narrowed the application of the two-hour rule of Vehicle Traffic *403 Law § 1194 (2) (a), is inescapable: the rule applies only in cases where the operator is incapable of giving consent, that is, in the so-called “implied consent” cases.
In view of the foregoing decisions, particularly People v Atkins (supra), the premise upon which the Fourth Department relied in reaching its conclusion in People v Brol (supra), specifically, that test results are universally incompetent if the test is not administered within the two-hour limit, is no longer valid. That being so, the conclusion itself, that evidence of a refusal not obtained within two hours is similarly incompetent, is unsupported. Indeed, logic now dictates a converse theorem: if evidence of the results of a chemical test expressly consented to by a defendant and administered beyond the two-hour limit is competent, then evidence of a refusal to take such a test, obtained beyond the two-hour limit, must similarly be competent (see, People v Morales, 161 Misc 2d 128; contra, People v Walsh, 139 Misc 2d 161).[2] A contrary conclusion would not only seem to defy reason, but would permit an operator of a motor vehicle to refuse a properly requested chemical test without consequence. If such were the case, the ruling in People v Atkins (supra) would become a hollow one. Any rendition of the refusal warnings noted in Vehicle and Traffic Law § 1194 (2) (b) (1); (c) and (f) beyond the two-hour limit would be pointless, even deceptive. The offer of the chemical test sanctioned by Atkins would become a mere gesture.
Buttressing the view that a refusal to take a chemical test offered beyond the two-hour limit comprises competent evidence is the plain language of Vehicle and Traffic Law § 1194 (2) (f), which deals with the requirements for admissibility of evidence of a refusal upon trial. This section makes no reference to any time limit.
Accordingly, defendant’s motion to suppress evidence of a refusal to take a chemical test on the grounds that the test was offered over two hours after the arrest is denied.
It should be noted that such a refusal constitutes evidence of consciousness of guilt. (People v Rundblad, 154 AD2d 746 [3d Dept 1989].) As such, it is subject to the requisite balancing of probative value versus prejudicial effect. (People v Davis, 43 NY2d 17 [1977]; People v Feldman, 296 NY 127 [1947].) This analysis, and the ultimate decision as to admissibility of evi *404 dence of the refusal to take the chemical test are reserved for the trial court.

. In People v Atkins (supra), the defendant consented to the chemical test within two hours of his arrest, but the test was not administered until after the two-hour period. In the practice commentaries to Vehicle and Traffic Law § 1194, it is contended that the Court found the test results admissible because the defendant consented to the test within the two-hour period. (Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 62A, Vehicle and" Traffic Law § 1194, at 98.) The majority opinion, however, does not ascribe any significance to the time of the consent and holds, without *403 qualification, that the two-hour limitation of Vehicle and Traffic Law § 1194 (2) (a) has no application in cases of express consent to a chemical test.

. See, People v Morales (supra) for an elucidative pre-Atkins analysis of the two-hour rule.