*921 OPINION OF THE COURT
Richard Lee Price, J.
The defendant is charged with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [1], [2], [3]).
Findings of Fact
On June 25, 2008, a Dunaway/Mapp /Huntley hearing was held before me. The hearing also addressed the admissibility of the results of a breathalyzer administered to the defendant more than two hours after her arrest. The People called one witness at the hearing: Police Officer Vladimir Delgado. No witnesses were called by the defendant. I find the witness credible to the extent indicated hereto. This decision expands the oral decision read into the record on May 13, 2008.
On May 13, 2007, at about 2:30 a.m., Police Officer Vladimir Delgado of the 49th Precinct and his partner received a radio transmission regarding a possibly intoxicated female sleeping behind the wheel of a Honda Accord in the parking lot of a White Castle on 2900 East Tremont Avenue in the Bronx (hearing transcript at 11-12). Upon responding to the location, Officer Delgado observed a Honda Accord “parked kind of crooked” in the lot. As he got closer to the vehicle, Officer Delgado observed two females sleeping in the front and a small child sleeping in the back (hearing transcript at 12). Defendant was seated behind the wheel of the vehicle and the second female was in the front passenger seat. The keys were in the ignition with the engine running and lights on.
Officer Delgado approached the driver’s side of the vehicle with his flashlight and tapped on the window, attempting to wake the defendant. The second female woke up first and assisted in waking the defendant. As the defendant rolled the window down, Officer Delgado smelled the odor of alcohol emanating from the vehicle. Officer Delgado asked the defendant to step out of the car. After the defendant exited the car, Officer Delgado noticed that she was unsteady on her feet, that her speech was slurred and that her eyes were bloodshot. Officer Delgado asked the defendant for identification and inquired where she had come from (hearing transcript at 62). The defendant stated that she was at a wedding reception, where she had five glasses of wine, and had driven from White Plains Road to Tremont Avenue (hearing transcript at 17). Officer Delgado *922 then placed the defendant under arrest. It was approximately 2:40 a.m.
The defendant was transported to the 28th Precinct in Manhattan, where she was given a breathalyzer test which yielded a result of .133. After administering the breathalyzer test, Officer Delgado advised the defendant of her Miranda rights. At this point, it was approximately 5:30 a.m. Defendant waived her rights and made a statement. During her statement, the defendant said that she had consumed 3V2 glasses of wine at the wedding reception, with her first drink at 11:00 p.m. and last drink at 12:30 a.m.
A videotaped statement taken of the defendant at the precinct, which depicted her taking the breathalyzer and coordination tests, was played during the hearing and introduced into evidence.
Conclusions of Law
The defendant’s motion to suppress the evidence flowing from her arrest on the ground that the arrest was not supported by probable cause is denied. Police Officer Delgado had a common-law right to approach defendant’s vehicle and inquire based upon his founded suspicion that she was operating a motor vehicle under the influence of alcohol, derived from the information contained in the radio transmission he received and his own observations at the scene (see People v Salinas, 286 AD2d 601 [1st Dept 2001]). The defendant’s vehicle matched the one described in the radio transmission, was parked in an unusual manner, and all three of its occupants were sleeping. Upon approaching the vehicle and observing the defendant seated behind the wheel asleep with the engine running, Officer Delgado had reasonable suspicion to believe that she was intoxicated and was justified in waking her (see People v De Bour, 40 NY2d 210, 223 [1976]). Officer Delgado’s reasonable suspicion was heightened after defendant rolled down her window and he smelled the odor of alcohol emanating from the car. Based upon his reasonable suspicion that defendant was intoxicated, Officer Delgado was justified in ordering her out of the car, asking her to produce identification, and inquiring where she was coming from. Upon observing that defendant was unsteady on her feet, that her eyes were bloodshot, and that her speech was slurred, Officer Delgado had probable cause to arrest her for operating a vehicle while intoxicated (see People v Bigelow, 66 NY2d 417, 423 [1985]; People v Goodell, 164 AD2d 321, 323-324 [2d Dept 1990], affd 79 NY2d 869 [1992]; People v Farrell, 89 AD2d 987, *923 988 [2d Dept 1982]). Accordingly, the defendant’s challenge to the legality of her arrest is unfounded.
There is also no basis for suppressing the statements made by the defendant at the scene of her arrest and at the precinct. The pre-Miranda statements made by defendant at the scene of her arrest were spontaneous and not the product of custodial interrogation (see People v Zapata, 41 AD3d 109 [1st Dept 2007]; People v Garcia, 19 AD3d 200 [1st Dept 2005]). The statements made by the defendant to the police officer who conducted the breathalyzer and coordination tests at the precinct are also admissible. Performance tests need not be preceded by Miranda warnings, and, a videotape of such tests, including any colloquy between the test giver and the defendant not constituting custodial interrogation, is admissible (see People v Jacquin, 71 NY2d 825 [1988]). Having viewed the videotape in the case at bar, the court finds that the colloquy between the test giver and the defendant did not constitute custodial interrogation. The subsequent statements made by the defendant at the precinct were elicited after she voluntarily waived her Miranda rights. Accordingly, defendant’s motion to suppress her statements to law enforcement authorities is denied.
Defendant seeks suppression of the results of the breathalyzer administered to her more than two hours after her arrest based upon the People’s failure to establish the reliability of the test results.
Under Vehicle and Traffic Law § 1194 (2) and the New York State Department of Health Regulations (10 NYCRR 59.2 [c] [2]) regarding the administration of blood and breath tests, it is mandated that the blood alcohol content (BAG) test shall be administered within two hours of arrest. In People v Atkins (85 NY2d 1007 [1995]), the Court of Appeals, in a split four to three decision, allowed a BAG test to be admitted into evidence where the defendant consented to take the test within two hours of his arrest, but where the test was not administered until two hours and 28 minutes after the arrest. The majority rejected the defendant’s contention that the two-hour time limitation in section 1194 (2) was an absolute rule of relevance, proscribing admission of results of tests administered after that period. The dissent, however, concluded that “[t]he two-hour limitation is a legislative determination on relevance: if the sample has not been taken within two hours the evidence is inadmissible” (id. at 1009 [Simons, J., dissenting in an opinion in which Chief Judge Kaye and Judge Titone concurred]). Even though a BAG *924 test administered after two hours may be admissible under Atkins, the scientific relevancy of the test may still be challenged, however. In People v Victory (166 Misc 2d 549 [Crim Ct, Kings County 1995, Maltese, J.]), a post-Ai&zres decision, the court concluded that a BAG test administered after more than two hours required expert testimony demonstrating that the test result was indicative of the defendant’s blood alcohol level at the time of the vehicle’s operation. In reaching this conclusion, the court reasoned as follows:
“This court believes that there is ample scientific evidence that the delay between the time of the arrest and the time a chemical test is given might significantly reduce the reliability of the evidence if that time period is too great. Our Legislature determined that as long as the test was given within two hours of the arrest then the results would be competent evidence. . . .
“BAG tests taken beyond two hours from arrest must still be demonstrated to be scientifically reliable and probative on the issue of intoxication in order to be admitted into evidence. It is inconceivable that the Court of Appeals through Atkins (85 NY2d 1007, supra) intends to communicate to the lower courts and the Bar that BAG tests administered at any time are admissible in evidence without some limitation into their probative value.” (People v Victory, 166 Misc 2d at 558-559, 564).
The court also reasoned that the People were not entitled to a presumption of admissibility for tests performed more than two hours from arrest, and were therefore required to prove the scientific reliability of such a late test at a hearing:
“[U]pon objection of the defense, the prosecution must establish, at a hearing by expert testimony, scientific evidence that a blood-alcohol content (BAG) test taken more than two hours after the arrest of the defendant is competent, reliable and probative of the fact that the defendant was impaired or intoxicated when he operated a motor vehicle before such results may be admitted as relevant evidence at the trial.” (Id. at 550.)
This court agrees with this rationale. Until Atkins is clarified, the prosecution must demonstrate, through expert testimony at *925 a hearing, the scientific reliability and probative nature of test results obtained more than two hours after the arrest.*
In the instant case, defendant, in moving to suppress the results of the breathalyzer, objected to the fact that the test was administered to her more than two hours after her arrest. Notably, defendant specifically sought and was granted a hearing on the reliability of the test. Notwithstanding the nature of the hearing ordered in this case, however, the People inexplicably presented no testimony, scientific or otherwise, to establish that the test administered to the defendant more than two hours after her arrest was competent, reliable and probative of the fact that she was impaired or intoxicated when she operated the vehicle. In light of the absence of any evidence establishing the scientific reliability of the breathalyzer administered to defendant more than two hours after her arrest, defendant’s motion to suppress the results of the breathalyzer is granted.

 See John M. Shields, Admissibility of DWI Chemical Test Results Obtained After the Two Hour Limit has Expired, 70 NY St BJ 58 [Sept./Oct. 1998]).