OPINION OF THE COURT
David Stadtmauer, J.
*516 Defendant is charged under Vehicle and Traffic Law § 1192 with driving while intoxicated and related offenses. At a Mapp (breathalyzer)/Dunaway hearing conducted by this court on February 9, 2009, one witness testified — Police Officer Modesto Alamo for the People. The court finds Officer Alamo to have been a truthful and reliable witness, and his testimony is credited accordingly.
Probable Cause for the Arrest
On November 17, 2007, at approximately 4:30 a.m., Police Officer Alamo and his partner, Police Officer Flores, were on routine patrol in their marked police vehicle in the vicinity of 2600 Briggs Avenue, Bronx County. There, they encountered a traffic jam because a double-parked van (with its engine running and all of its lights on) had been blocking vehicular traffic on a one-way street heading northbound. In addition, a number of backed-up drivers were honking their car horns, and some were attempting to go into reverse gear in order to extricate themselves from the situation.
After clearing out the backed-up vehicles, the officers drove up behind the van and turned on their siren and turret lights in order to get the driver’s attention. There was no response and the van did not move.
Police Officer Alamo looked inside and saw defendant asleep in the driver’s seat, with his foot on the brake and the gearshift in “drive.” Alamo opened the door, removed the defendant’s foot from the brake and placed his own foot upon it, and then he shifted the gear into “park.”
After finally rousing the defendant from his slumber, Officer Alamo observed that the defendant’s eyes were bloodshot, his speech was slurred, and there was a strong odor of alcohol emanating from his breath. In addition, after defendant exited the van, the officer observed that the defendant was “very unsteady on his feet” and that he “couldn’t really stand up straight.”
Police Officer Alamo concluded that the defendant was operating a motor vehicle while intoxicated. The defendant was placed under arrest, handcuffed, and brought to the 52nd Precinct to begin the formal processing of paperwork.
In view of all the circumstances as previously set forth, the court finds that the police acted properly and reasonably in approaching defendant’s van, as well as in each of their subsequent actions (which were based upon legitimate concerns for public *517 and personal safety), and that there was probable cause for the arrest.
Intoxication Testing
After the initial processing at the 52nd Precinct, the defendant was taken by Officer Alamo to the 45th Precinct, where the police department maintained facilities and machines for intoxication testing. There, with Officer Alamo also being present, the defendant was asked by Police Officer Robles if he would take a breathalyzer test and the defendant verbally and voluntarily consented.
It is unclear as to exactly what time the defendant’s consent was obtained by the police; however, it was agreed by the parties that this consent was requested and obtained more than two hours after the arrest. It was also agreed that the breathalyzer test was administered by Police Officer Robles at 7:38 a.m., approximately three hours after the arrest, and that after the test, the breath machine registered slightly in excess of the statutory per se intoxication threshold of “.08 of one percentum ... by weight of alcohol in the [defendant’s] blood as shown by chemical analysis.” (See Vehicle and Traffic Law § 1192 [2].)
Discussion Regarding the Two-Hour Rule
One of the contested legal issues that arose at this hearing was the applicability of the so-called “Two-Hour Rule” that is embodied in Vehicle and Traffic Law § 1194 (2) (a). The statute reads, in pertinent part, as follows:
“Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer . . .
“(1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section eleven hundred ninety-two of this article and within two hours after such person has been placed under arrest for any such violation.” (Vehicle and Traffic Law § 1194 [2] [a].)
The defense views the “Two-Hour Rule” as a rule of evidence which precludes admissibility of breathalyzer results at trial if the test is performed more than two hours after arrest. The *518 defense, in conclusory fashion, also urges the court to consider the test results as inherently unreliable after two hours because, under certain circumstances, blood alcohol content can rise over time rather than diminish (thus skewing the significance and relevance of the test).
The People, in opposition, do not see Vehicle and Traffic Law § 1194 (2) (a) as an evidentiary rule of admissibility and reliability, but rather as a procedural rule allowing the police to conduct a chemical intoxication test based upon a statutory “implied consent” of a motorist in situations where express consent cannot be obtained within a two-hour framework. In other words, the People urge the court to consider that statute as a “consent” rule which does not apply in cases where the motorist gives express consent for the test. In support of this position, the People refer this court to a number of cases, but rely principally upon a decision of the Court of Appeals which held the aforementioned two-hour limitation to be inapplicable where “defendant expressly and voluntarily consented to administration of the blood test.” (People v Atkins, 85 NY2d 1007, 1009 [1995].)
The defense distinguishes Atkins in several ways. First, it is urged that Atkins involved a motorist who was impaired by the ingestion of the controlled substance PCI] not alcohol, and that there is a material difference between those two substances. Second, the defense points out that in Atkins, the motorist’s express consent came before the two-hour period ended (in contrast to the instant case, where both the consent and the test came more than two hours after arrest). The defense also contends that the “Two-Hour Rule” was a legislative recognition of a test’s reliability only within the aforementioned two-hour period. Therefore, any test given after that — irrespective of a defendant’s express consent — should be deemed inherently unreliable unless supported by expert or scientific testimony at a pretrial hearing. In support of their contentions, the defense cites People v Holbrook (20 Misc 3d 920 [Sup Ct, Bronx County, July 11, 2008, Price, J.]) and the decisions of several other courts of coordinate jurisdiction.
Initially, the court rejects defendant’s contention that the “Two-Hour Rule” is an absolute prerequisite to the admissibility of breathalyzer results into evidence at trial. The court is unaware of any rule of evidence or any provision in the Vehicle and Traffic Law that absolutely and automatically precludes breathalyzer results obtained after the two-hour period merely *519 because the clock has passed the two-hour mark. In addition, the Court of Appeals in Atkins makes clear that the results of a test administered after two hours may not be precluded for that reason alone where there was express and voluntary consent by the defendant to the administration of that test.
This court also fails to discern any material difference between PCP and alcohol, insofar as the “Two-Hour Rule” is concerned. Indeed, the language of Vehicle and Traffic Law § 1194 (2) (a) as well as Atkins clearly encompasses any chemical test to determine the alcoholic and/or drug content of the blood, without drawing any distinction between testing for alcohol and drugs.
As for the matter of when a defendant’s express consent is obtained, the court does not find that to be of significance. The only real issue regarding reliability is when the test is actually administered. Thus, Atkins should not be read so narrowly as to create a limited exception to the “Two-Hour Rule” only in circumstances where the consent is given before the clock strikes two.
The fact of defendant’s express and voluntary consent brings the test results into the ambit of evidentiary admissibility— assuming, of course, that a number of other factors also exist (such as, for example, that there was probable cause for the arrest, that the person administering the breathalyzer test was properly certified, that the machine type and model used was previously found to be scientifically reliable and legally acceptable, and that the particular machine that was used with respect to the defendant was previously tested in a timely fashion and found to be in satisfactory working order, etc.).
In a post-hearing submission, the defense urges that if this court were to permit evidence of post-two-hour test results at trial without any pretrial expert/scientific evidence of reliability, then admissibility would become open-ended and there would be nothing to prevent the People from offering evidence of a test taken even many days after an arrest. That argument, however, is rejected since blood alcohol content measured after a lengthy period of time following arrest would be negligible and meaningless, and would not likely even be offered into evidence by the People.
What evaporates at the end of two hours is only the implied statutory consent to the taking of the test, and there is nothing to suggest that the breathalyzer test itself is unreliable merely because a two-hour time frame has elapsed. As to whether the *520 blood alcohol content in the defendant was measurably higher or lower at the time of arrest three hours earlier — the parties are free to submit evidence on and argue that question to the trier of fact at trial, along with the overall matter of the test’s reliability. (See People v D.R., 23 Misc 3d 605 [Sup Ct, Bronx County, Feb. 10, 2009, Marcus, J.].)
Conclusion
The defendant’s motion to suppress physical evidence (breathalyzer testing results) is denied.